DicemAN, J.
The original action was commenced on the 9th day of January, 1886, in the Court of Common Pleas of Hamilton county, by Frank J. Jones and Wood Fosdick, as executors of Samuel Fosdick, deceased, the plaintiffs in *407 error, against James P. Kilbreth, trustee of The Ohio Rife Insurance & Trust Company, the defendant in error, to collect out of moneys and other assets in the hands of Kil-breth as trustee, the amount of a judgment for $7,007.34 recovered by Samuel Fosdick against Kilbreth, as trustee, in the Superior Court of Cincinnati.
The Ohio Rife Insurance & Trust Company, a corporation duly organized under the laws of Ohio, and engaged in the city of Cincinnati, Ohio, and in the city of New York, in the business of banking, receiving money on deposit, and paying the same upon the drafts or checks of depositors, became insolvent and closed its doors for the transaction of business on the 24th day of August, 1857, and on the 2fith day of September, 1857, made an assignment of all its property and assets in trust for its creditors, to certain trustees who accepted and entered upon the duties of their trust. Thereafter, on or about the 1st day of January, 1859, under an order of court, James P. Kilbreth was appointed, and qualified as trustee for the creditors of the Trust Company, and took charge of its property and assets in trust for the uses and purposes for which the first appointed trustees had held and administered the same.
In January, 1878, Kilbreth, as trustee, brought an action in the Superior Court of Cincinnati against Samuel Fosdick, then in life, wherein he sought to recover of him a sum of money upon an account alleged to be due the trust estate.
In that action Fosdick denied the indebtedness, and set up, by way of cross-petition, an indebtedness of the trust estate to him on a certain draft hereinafter described, and asked judgment therefor. At the June term, 1881, of the Superior Court, judgment was rendered for Fosdick against Kilbreth in the following words: “Whereupon it is considered by the court that the defendant recover of the plaintiff, as trustee, the sum of seven thousand and seven and 34-100 dollars with interest from the first day of this term, and his costs herein expended, taxed at $-.” Upon the death of Fosdick thereafter, this judgment was revived in the names of the plaintiffs in error, as executors of his last will and testament. On this judgment Fosdick or his represen *408 tatives, never drew any dividends out of the assets of the Trust Company, although many dividends we redeclared, and paid to the creditors of the company.
On the 13th day of February, 1884, an execution was issued upon the judgment in favor of Samuel Fosdick. No goods and chattels being found whereon to levy, the sheriff levied upon certain lots of land situated in Hamilton county, and owned by and standing in the name of James P. Kilbreth. Kilbreth filed a motion in the case to quash the execution. The motion was reserved to the general term of the Superior Court, and at the November term thereof, 1884, was sustained; the execution was quashed, and entry was made upon the records of the court, as follows:
“This cause came on for hearing at the general term of said court, to-wit: the November, 1884 term thereof, on the motion of the plaintiff to quash the writ of execution issued in the court below, and the levy made under said writ, the-hearing of said motion having been reserved to the general term of said court, upon the pleadings and record of the judgment of the court below, and the execution and return thereto, and this court sitting in general term being fully advised in the premises, doth order and adjudge that said motion be and the same is hereby granted, and said execution and the levy thereunder are hereby quashed and set aside; and it is further ordered and adjudged that no further writ of execution issue, save and excepting for the amount of dividends heretofore declared upon claims against The Ohio Eife Insurance & Trust Company, and for such other sums as may hereafter be declared as dividends upon said claims, and upon application to the court, in special term, and the cause is remanded to special term for further proceedings.”
The cause of action in favor of Samuel Fosdick, in the suit in the Superior Court, arose out of the collection of a certain draft, the property of F'osdick, dated August 14,1857, payable thirty days after date, and drawn on David Dows & Co., New York, for f> 2,883.86, which sum, with interest, madeup' the amount of $7,007.34, for 'which Fosdick recovered judgment. On or about tlie 20th day of August, 1857, Fosdick. sent or delivered this draft to The Ohio Rife Insurance &. *409 Trust Company tor collection. The draft was accepted by the drawees and was paid at maturity. But, on the 24th day of August, 1857, before the draft was collected, the firm of Brown Brothers & Co., of the city of New York, creditors of The Ohio Rife Insurance & Trust Company, brought suit against that company in the county and state of New York, and issued an attachment therein, directed to the sheriff of the county, by virtue of which; the sheriff levied upon the draft and other property in the hands of the Trust Company, and took the same from the possession of the Trust Company, and collected the amount due on the draft, and accounted for the proceeds to Brown Brothers & Co.
Subsequently to the failure of The Ohio Rife Insurance & Trust Company, to-wit, after August 24th, 1857, Kilbreth, as trustee, had an adjustment with Brown Brothers & Co. of their claim against the Trust Company, by the terms of which adjustment the attachment above mentioned was released, and a credit was given to the Trust Company by Brown Brothers & Co., on the indebtedness to them of the Trust Company, of the proceeds of the draft drawn on Dows & Co., for two thousand eight hundred and eighty-three and 86-100 dollars.
• In the original action, the plaintiffs in error, claiming that the proceeds of the draft on Dows & Co. were traceable into the assets of The Ohio Rife Insurance & Trust Company, asked that Kilbreth might be adjudged and decreed to pay in full the judgment recovered by Eosdick in the Superior Court, out of the money in his hands as trustee, with such other relief as . might be e-quitable and proper in the premises. The court of common pleas found the equity of the case in favor of the defendant, and gave judgment accordingly. The plaintiff appealed to the circuit court, and that court also found in favor of the defendant, and dismissed the plaintiff’s petition. A motion for a new trial was made by the plaintiffs and overruled, to which ruling of the court they excepted, and presented their bill of exceptions embodying all the evidence offered by the parties, or either of them, on the hearing of the case, which was allowed and made part of the record. This proceeding in error is prosecuted to reverse the judgment of the circuit court.
*410 1. It is urged in behalf of the defendant in error, that the court of common pleas had no jurisdiction of the subject-matter of the action. The contention is that the action is substantially one to establish a preference in the distribution of the assets of the Trust Company, and that of such proceedings the probate court has exclusive jurisdiction. If Fosdick, so far as the draft was concerned, was not a creditor of the Trust Company, the question of preference among creditors does not arise. The real question seems to be whether the Trust Company having received the draft on Dows & Co. for a specific purpose, there was not a wrongful application by the Trust Company of the proceeds of the draft, to extinguish a portion of that company’s indebtedness to the firm of Brown Brothers & Co.
The case of Sayler v. Simpson, 45 Ohio St. 141, is referred to as determining the exclusive jurisdiction of the probate court. In that case, the contest was between mortgagees and unsecured creditors, over the distribution of a fund in the hands of the assignee, arising from the sale of personal property in which the assignor confessedly had a property interest, although, at the time of the sale, the personal property was subject to separate mortgages given to secure separate indebtness to each of several creditors. But, as said in Lindemann v. Ingham, 36 Ohio St. 15, “the act regulating assignments does not undertake to invest the assignee with property which did not belong to the assignor;” and in the case at bar, it is not claimed that the Dows & Co. draft represented by the judgment for $7,007. 34, belonged to the assignor, the Trust Company. . On the contrary, it is contended that the draft never formed any part of the trust estate and never came within the administration of the assignment, and that the representatives of Fosdick are invoking equitable relief to obtain possession of his own property wrongfully placed in the trust estate. If the Trust Company, as an agent of the owner, received from him the draft for collection only, with an obligation to account for and pay over the proceeds to him, a fiduciary relation with the owner was thereby established, and if his representatives trace the proceeds into the hands of the Trust Com *411 pany, and seek to impress upon the propertj in its substituted form a trust-character, the court of common pleas would not be without jurisdiction to afford equitable relief by declaring and enforcing the trust. Gilbert v. Sutliff, 3 Ohio St. 129; Carter v. Lepsey, 70 Ga. 417; Commercial bank v. Armstrong, 39 Fed. Rep. 684.
II. Again, it is contended that the relation between Fos-dick and the Trust Company was that of debtor and creditor, and that he was entitled, by virtue of that relation, to receive on the judgment he recovered in the Superior Court nothing more than pro rata dividends as other creditors of the insolvent company, The draft on Dows & Co. did not become due until about the middle of September, 1857, and therefore, was not paid by the drawees until after the 24th of August, 1857, when the Trust Company became insolvent and ceased to do a banking business. It is said that on the day of its failure, the Trust Company credited the amount of that draft to Fosdick as a depositor, and thereby became his debtor, and placed him upon the footing of an ordinary creditor entitled only to dividends when declared by the trustee of the company. But, as the Trust Company had failed before the draft was collected, and received the benefit of it after failure, in the form of a_credit by Brown Brothers & Co., its agency to make itself a general debtor to Fosdick, by crediting him with the proceeds of the draft, had terminated. -
In Levi v. Bank, 5 Dill. 109, 110, it is said by the court, “When the money was received;-and not before, the agency of the defendant bank to collect terminated, and its authority to credit the amount to the plaintiffs and to make itself an absolute debtor therefor would then arise, provided it was still a going concern; but inasmuch as before it received the money it had failed, its agency to constitute itself a general creditor for the amount had ceased to exist. It would hold the amount as the agent of the plaintiffs, or in trust for it, subject to any balance due it from the plaintiffs. * ****** Fhe force of the argument of the defendants’ counsel, that the defendant bank, on the very day of its failure, and when it was in articulo mortis, had the right, by a credit in advance of collection, or by its unauthorized act *412 in receiving the check and in procuring its certification, to terminate, without the plaintiffs’ consent, the agencv, and to constitute itself the actual debtor for the amount, against the plaintiffs’ will and against their interest, I must confess I nave been unable to perceive.” See also the case In re Armstrong, 38 Fed. Rep., 405, and authorities there cited, in which the above doctrine is enunciated. Indeed, the rule seems to be well settled, that after a bank has suspended, it ought not to receive payments upon business paper previously deposited with it for collection, in such a manner that the money so received by it will, pass into its general assets, and the owner of the paper be placed in the position of one of its creditors, entitled only to take his dividend; and proceeds received after the bank becomes insolvent, will be held in trust, and may be recovered in full. Morse Bk. § 248 a.
The record plainly discloses that the Dows &'Co. draft was placed with the Trust Company for collection. It is true, that while in the Trust Company’s hands, it was attached by a creditor, and when paid at maturity by the drawees, the proceeds were accounted for by the sheriff to the attaching creditor. But the Trust Company received the full benefit of the draft. It went to pay a portion of its indebtedness. The Company and trustee might have opposed its application by the attaching creditor, as being the property of another, but they did not see fit so do do. On the contrary, Kilbreth, as a trustee, made an adjustment with Brown Brothers & Co., by which the firm’s attachment was released, and the proceeds of the draft were applied in part payment of the Trust Company’s indebtedness. The estate of the Trust Company was thereby increased to the extent of the amount of the draft, for the benefit of all its creditors. But, the creditors could not, with a show of equity, ask that the proceeds of a draft, clearly indentified as not the property of the Trust Company but of Fosdick, be applied to swell the trust fund for their benefit. To all intents and purposes, the proceeds of the draft went into the assets of the Trust Company — as much so, as if the Company had first collected the draft, and then paid over its canteáis to Brown Brothers & Co. The paper was im *413 pressed with a trust when received for collection, and its proceeds, bearing the same impress, are traceable and identifiable as having been used by the Trust Company in place of its own assets to pay a specific creditor. “Where the rightful owner is in pursuit of trust funds, he need not point out the very goods or bills or coin. He does all the law requires if he shows that the goods or bills or coin came to the hands of the defendant impressed with a trust to his knowledge. In every such case the holder must respond either in the article taken or its value.” Thomson v. Gloucester City Sav. Inst., 8 Atl. Rep. 97, (N. J. Chancery.)
If upon the maturity and payment of the Dows & Co. draft in the middle of September, 1857, the proceeds thereof were credited to the Trust Company before the date of its assignment for the benefit of creditors, that fact would not release the assignee from the performance of a trust impressed upon the paper or.its proceeds prior to the assignment. The general assignee of a debtor in failing circumstances stands in the same condition as the dedtor himself; he is deemed to possess the same equities only as the debtor himself would possess. Sto. Eq. Jur..§ 1228; First Nat. Bank v. Mastin Bank, 2 McCrary, 438.
When paper is deposited for collection, the relation between the depositor and bank is that of principal and agent. If an agent for that special purpose, collects or sells the paper of his principal, he becomes a fiduciary, and will hold the proceeds in trust for the principal; and if the agent fails, there will be no reason why his general creditors should invade such proceeds to satisfy their claims, if the principal can trace or ascertain his property in the substituted form. Whether, in a given case, the proceeds have been sufficiently traced and identified, must rest in the judgment of the chancellor who is called upon to declare the proceeds subject to a distinct trust. In the case at bar, we think, that in the light of undisputed facts, and upon equitable principles, the proceeds of the Dows & Co. draft should be deemed held in trust for the estate of Samuel Eosdick, and payable in full out of the assets of the Trust Company.
III. But it is urged that the claim of the plaintiffs in error has been adjudicated against them by the Superior *414 Court, in the judgment at general term quashing the execution, and also in the judgment at special term. The execution was levied upon real estate, the individual property of James P. Kilbreth, but in the decision of the motion to set aside and quash, the only question directly involved and necessarily tried and determined was, whether the judgment was against Kilbreth individually. The court held that the judgment was not against him individually, and for that reason quashed the execution. But no other controversy was properly concluded by the decision of the motion.
The judgment rendered at the special term was, “that the defendant recover of the plaintiff, as trustee, the sum of seven thousand and seven dollars and thirty-four cents, with interest” etc. If it was thereby designed that execution should issue only for the amount of dividends declared or to be declared upon claims against the Trust Company, the form of judgment prescribed by statute would naturally be suggested, that the assignee or trustee “allow the claim in settlement of his trusts.” The judgment contains no limitation or qualification as to the amount to be paid by Kilbreth “as trustee.” By its terms, it may apply to a trustee who, in his representative or fiduciary capacity, has come into the possession of property or money found upon legal inquiry to belong to a particular claimant, and not subject to dividend among creditors of the insolvent. Conger v. Atwood, 28 Ohio St. 184.
The purpose of the suit at bar is to obtain equitable relief in aid of the judgment recovered in the Superior Court, upon which there was a failure to realize anything by levy of execution. It is claimed that a trust attached to the proceeds of the Dows & Co. draft, which were wrongfully placed in the trust estate, and which cannot be reached without the interposition of a court of equity. In seeking equitable relief in such case, we do not think that the plaintiffs in error are estopped by the judgment rendered in favor of Samuel Fosdick in the Superior Court. In our opinion therefore, the judgment of the circuit court should be reversed, and the cause, remanded for further proceedings.

Judgment accordingly.